DECISION
{¶ 1} Relator, John Barker, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator permanent total disability ("PTD") compensation and to issue an order granting said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In concluding that the commission did not abuse its discretion, the magistrate made essentially three findings.
 {¶ 3} First, the magistrate found that Dr. Murphy's report constituted some evidence upon which the commission could rely, even though Dr. Murphy incorrectly stated that relator's foot surgeries were not related to an allowed claim. The magistrate noted that Dr. Murphy examined relator solely for relator's allowed psychological condition. Therefore, a mistake regarding relator's allowed physical condition did not prevent the commission from considering Dr. Murphy's report for purposes of the allowed psychological condition. Moreover, the magistrate points out that there was also other evidence (Dr. Clary's report) upon which the commission could rely in concluding that relator's psychological condition was not work prohibitive.
 {¶ 4} Second, the magistrate found that the commission did not abuse its discretion in finding relator's age of 60 to be a neutral factor. The Supreme Court of Ohio has held that age alone is insufficient to support a finding of permanent and total disability. State ex rel. Mossv. Indus. Comm. (1996), 75 Ohio St.3d 414.
 {¶ 5} Lastly, the magistrate found that the commission's explanation for why relator's prior work history was a positive factor in its vocational analysis was sufficient. The magistrate noted that the commission identified a number of relator's skills and experiences acquired during relator's past employment, that would enhance relator's employability. Therefore, the magistrate concluded that the commission did not abuse its discretion in conducting its vocational analysis. *Page 3 
 {¶ 6} Based upon these three findings, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 7} Relator filed objections to the magistrate's decision arguing that the magistrate should have found the commission abused its discretion in considering Dr. Murphy's report and in conducting its vocational analysis. Essentially, relator argues the same points that were adequately addressed by the magistrate. For the reasons set forth in the magistrate's decision, we find relator's arguments unpersuasive. Therefore, we overrule relator's objections.
 {¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and McGRATH, J., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on March 21, 2007 IN MANDAMUS {¶ 9} Relator, John Barker, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 5 
disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 10} 1. Relator has sustained several work-related injuries as a result of his employment and his workers' compensation claims have been allowed for the following conditions:
 * * * [C]laim number 99-612399 has been allowed for: RIGHT FOOT CONTUSION; POST-TRAUMATIC AR-THROPATHY OF LISFRANC'S JOINT RIGHT FOOT; claim number L280670-22 has been allowed for: RIGHT IN GUINAL SPRAIN; claim number L279634-22 has been allowed for: LEFT HAND CONTUSION; and claim number OD24849-22 has been allowed for: EPICONDYLITIS, RIGHT AND LEFT ELBOWS; AGGRAVATION OF PRE EXISTING ADJUSTMENT DISORDER WITH DEPRESSED MOOD.
(Emphasis sic.)
 {¶ 11} 2. On January 6, 2006, relator filed an application for PTD compensation. On that application, relator indicated that he was 60 years old, had completed the 12th grade in 1963, did not have any special trade or vocational training, could read, write and perform basic math, uses a brace, has participated in rehabilitation services, and can drive a car.
 {¶ 12} 3. Relator submitted two reports from Naseem M. Chaudhry, M.D., for his allowed psychiatric condition. In his December 12, 2005 report, Dr. Chaudhry stated:
 * * * I can state with a reasonable degree of psychiatric certainty that this claimant is suffering from a permanent and total psychiatric disability, based on his current presentation. He continues to have chronic and disturbing symptoms of depression and anxiety and will most likely require continued close psychiatric monitoring with psychotherapy, as well as *Page 6 
psychotropic medication management for an indefinite period of time.
 {¶ 13} In his June 14, 2006 report, Dr. Chaudhry indicated that relator continued "to display and manifest moderately severe psychiatric symptomatology, as well as significant impairment in his quality of life with lack of enjoyment, pervasive sense of hopelessness, helplessness and disturbed sleep and nightmares." As such, Dr. Chaudhry indicated that it would be necessary to increase the frequency of relator's psychiatric visits in order to stabilize his current psychiatric symptoms.
 {¶ 14} 4. Relator also submitted the April 10, 2006 report of Timothy E. Ryan, D.O., which appears to have been written in response to a December 2005 evaluation of relator by Paul T. Hogya, M.D. Dr. Ryan indicated that he sees relator every two months and that relator is dealing with chronic pain. Dr. Ryan requested that the issue of chronic pain medications be approved.
 {¶ 15} 5. Relator was examined by commission specialist Robin G. Stanko, M.D., who issued a report dated March 2, 2006. After noting the history of relator's injuries and complaints of pain, Dr. Stanko provided his objective findings upon physical examination. Thereafter, Dr. Stanko addressed each condition individually and ultimately concluded that relator had reached maximum medical improvement ("MMI"), suffered an eight percent whole person impairment, and was capable of performing at a sedentary work level.
 {¶ 16} 6. Relator was also examined by Michael A. Murphy, Ph.D., for his psychological condition. In his report dated March 9, 2006, Dr. Murphy noted that relator has participated in extensive psychiatric treatment since 1994, his depression is mild, preexisted his injury, and does not impair his daily functioning. Dr. Murphy also indicated *Page 7 
that relator had reported a number of unrelated surgeries including his back, bilateral carpal tunnel and bilateral foot surgeries, and that relator indicated that he requires further unrelated foot surgery. Ultimately, Dr. Murphy concluded that relator had reached MMI, assessed a 14 percent whole person impairment, noted that his psychological condition is of a mild severity and is not work-prohibitive, and that relator could return to work with no psychological limitations.
 {¶ 17} 7. Relator was also examined by Richard H. Clary, M.D., for his allowed psychological condition. In his March 8, 2006 report, Dr. Clary noted that relator has been receiving appropriate psychiatric treatment since 1994. Dr. Clary opined that the average length of treatment for the psychiatric conditions allowed in relator's claim would be between six and 12 months. As such, Dr. Clary opined that relator has had more psychiatric treatment than is necessary on average. Dr. Clary further opined that relator's allowed psychiatric condition had reached MMI, is not work-prohibitive, and does not cause permanent total disability. He noted that relator informed him that "there are many things that he would like to do but he reported the only limiting factor is his pain, not loss of interest which would be the case with a more severe depression." Dr. Clary also opined that relator had a ten percent permanent partial impairment and there were no limitations or work restrictions as a result of his psychiatric condition.
 {¶ 18} 8. Two vocational reports are in the record. In her April 15, 2006 report, Molly S. Williams concluded that as an individual of advanced age, with a high school education completed in the remote past, with no transferable skills, and who is not expected to make a vocational adjustment to other work based upon the allowed physical impairments noted by Dr. Stanko, relator was permanently and totally disabled. In his *Page 8 
May 8, 2006 report, Craig Johnston, Ph.D., concluded that while relator's age was a potential barrier to employment, it was not alone work-prohibitive. Dr. Johnston found that relator's high school education and his ability to read, write and perform basic math, were assets to securing future employment. With regard to his work history, Dr. Johnston noted that relator had demonstrated the ability to work in both unskilled and semi-skilled jobs requiring averaging aptitudes of general learning ability, verbal skill, form perception, finger dexterity, manual dexterity, and color discrimination. Dr. Johnston also identified certain jobs which he believed relator would be capable of performing. Ultimately, Dr. Johnston concluded that relator was not permanently and totally disabled.
 {¶ 19} 9. Relator's application was heard before a staff hearing officer ("SHO") on July 28, 2006, and resulted in an order denying the requested compensation. The SHO relied upon the medical report of Dr. Stanko and concluded that relator was capable of performing at a sedentary work level. The SHO also relied upon the reports of Drs. Murphy and Clary and concluded that relator's psychiatric condition was not work-prohibitive.
 {¶ 20} Thereafter, the SHO addressed the nonmedical disability factors. The SHO found that relator's age of 60 years was a vocationally neutral factor in part because of relator's varied life and work experience which relator could bring to a new job. The SHO also found that relator's education was a vocationally positive factor especially upon discovering, at hearing, that relator had completed additional training at the Central Ohio Training Academy where he took computer classes and received a certificate upon successful completion of the program. Thereafter, the SHO listed relator's prior jobs and found his work history to be positive as follows: *Page 9 
 The injured worker stated that he enjoyed fairly steady employment over the years since high school. He testified that he learned his work skills through "on-the-job training," and did supervise one person when he was the owner/operator of the gas station. Over the course of his employment history, the injured worker demonstrated the ability to perform repetitive work, make judgments and decisions, learn to weld, learn to operate a tow motor, perform a variety of tasks, keep records, work with the public, work with money, run a cash register, operate a computer, work with food, supervise an employee, train other employees to fill in on his job when he was off work on vacation, and work under specific instructions. Additionally, by virtue of his long history of employment, the injured worker has demonstrated an ability to perform general tasks of employment such as meeting attendance requirements, getting along with co-workers, and learning new tasks as required over the years. He stated that he was never fired from any job, and from this, the Hearing Officer finds the claimant was able to learn all the skills necessary to perform the required work.
 As listed above, this Hearing Officer finds the injured worker does have many transferable skills, which would be positive for re-employment in at least an entry level, sedentary position, within the identified physical restrictions.
 {¶ 21} Based upon his ability to perform sedentary work and the fact that the SHO found his education and work history to be positive factors while his age was a neutral factor, the SHO denied relator's application for PTD compensation.
 {¶ 22} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by *Page 10 
entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 24} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 25} Relator first challenges the report of Dr. Murphy because Dr. Murphy incorrectly stated that relator had suffered from unrelated surgeries to his feet. Because relator's bilateral foot surgeries were the result of his industrial injury, relator contends that Dr. Murphy's report cannot constitute some evidence upon which the commission could have relied. *Page 11 
 {¶ 26} There are two reasons why this magistrate concludes that Dr. Murphy's incorrect statement that relator had undergone unrelated foot surgeries does not warrant the granting of a writ of mandamus in this case. First, Dr. Murphy was examining relator solely for his allowed psychological condition. As such, any reference to relator's surgeries for his allowed physical conditions, whether accurate or, in this case inaccurate, does not constitute a reason to remove his report from evidentiary consideration. Second, even if Dr. Murphy's report was removed from evidentiary consideration, the SHO specifically relied upon the report of Dr. Clary, who also examined relator for his allowed psychological condition, and who likewise concluded that relator's allowed psychological condition was not work-prohibitive. As such, this argument of relator's is not well taken.
 {¶ 27} Relator also contends that the commission abused its discretion by finding that his age was a neutral factor. The Supreme Court of Ohio has held that there is not an age, ever, at which reemployment is held to be a virtual impossibility as a matter of law. State ex rel. Pass v.C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; State ex rel. DeZarn v.Indus. Comm. (1996), 74 Ohio St.3d 461; State ex rel. Bryant v. Indus.Comm. (1996), 74 Ohio St.3d 458. Furthermore, the court has held that age alone is insufficient to support a finding of permanent and total disability. See State ex rel. Moss v. Indus. Comm. (1996),75 Ohio St.3d 414. In the above-cited cases, the claimants' ages were 64, 71, 79 and 78 years old, respectively. Here, relator was 61 years old. In finding that claimant's age was a neutral factor, the commission found that it was neither a positive nor a negative factor influencing his ability to return to work. The magistrate finds that the *Page 12 
commission did not abuse its discretion in finding relator's age of 60 to be a neutral vocational factor.
 {¶ 28} Lastly, relator contends that the commission abused its discretion by finding that his prior work history was a positive factor and directs this court's attention to the Supreme Court of Ohio's decisions in State ex rel. Bruner v. Indus. Comm. (1997),77 Ohio St.3d 243; State ex rel. Pierce v. Indus. Comm. (1997), 77 Ohio St.3d 275; andState ex rel. Mann v. Indus. Comm. (1998), 80 Ohio St.3d 656, in support.
 {¶ 29} In Bruner, the claimant was 59 years old, had obtained a GED, and had work experience as a maintenance worker and window washer. That claimant was now limited to sedentary to light duty work. Without identifying any transferable skills, the commission concluded that the claimant had sufficient vocational skills to obtain or be trained for sedentary or light employment. In finding that the commission's analysis of the nonmedical disability factors constituted an abuse of discretion, the court stated:
 We are disturbed by the increasing frequency with which the commission has denied permanent total disability compensation based on "transferable skills" that the commission refuses to identify. This lack of specificity is even more troubling when those "skills" are derived from traditionally unskilled jobs. As such, we find that the commission's explanation of claimant's vocational potential in this case is too brief to withstand scrutiny.
Id. at 245.
 {¶ 30} In Pierce, the claimant was 62 years old, had a tenth grade education, and work experience as a journeyman, ironworker and foreman ironworker. The claimant was restricted to light duty employment. The commission concluded that considering the claimant's past work history which included supervisory experience, the claimant possessed skills which would transfer to similar or lighter duty employment. In granting a *Page 13 
writ of mandamus on grounds that the commission's mere acknowledgment of the claimant's age and education was not enough, the court stated:
 The commission's discussion of claimant's work history is also inadequate. With increasing, and disturbing, frequency we are finding that no matter what claimant's employment background is, the commission finds skills — almost always unidentified — that are allegedly transferable to sedentary work. In some cases, depending on the claimant's background, these skills are self-evident. In many cases, they are not.
Id. at 277.
 {¶ 31} Lastly, in Mann, the claimant was 59 years old, had an 11th grade education, received his GED, and had work history as a packer, ceramic factory worker, restaurant worker, factory and assembly worker, cook, cashier and cleaner. The claimant was restricted to low stress sedentary work. Relying upon the fact that the claimant was three years away from the normal retirement age and his work experience as a restaurant worker, cook and cleaner, the commission found that the claimant had some skills in the food service industry that may transfer or apply to sedentary low stress positions. In finding an abuse of discretion, the Mann court stated:
 The commission, in finding claimant capable of work, relies overwhelmingly on claimant's past employment. Its discussion is flawed because, despite excessive verbiage, it is no more than a recitation of claimant's nonmedical profile. The commission lists claimant's work history three times but never explains how those nonsedentary jobs equip claimant for a sedentary position. Moreover, the commission's reference to "sedentary low stress positions in the food service industry" merits further explanation. While the commission is generally not required to enumerate the jobs of which it believes claimant to be capable, its assertion that claimant could do low stress sedentary work in an industry that is traditionally considered neither low stress nor sedentary requires further exploration. *Page 14 
Id. at 659.
 {¶ 32} Upon review of the commission's analysis of the nonmedical disability factors in the present case, this magistrate concludes that the commission did not abuse its discretion and the analysis provided in this case is not egregious as the Supreme Court of Ohio found in the above three cited cases. Without reciting the entire portion, the commission stated that relator had supervised one person while he was the owner/operator of a gas station, demonstrated the ability to perform repetitive work, make judgments and decisions, learned to weld, learned to operate a tow motor, perform a variety of tasks, keep records, work with the public, work with money, run a cash register, operate a computer, work with food, supervise an employee, train other employees to fill in on his job when he was off on vacation, and work under specific instructions. Further, the commission found that relator demonstrated an ability to perform general tasks of employment such as meeting attendance requirements, getting along with co-workers, and learning new tasks as required over the years. The magistrate finds that the above recitation of positive skills meets the requirements of law and does not constitute an abuse of discretion.
 {¶ 33} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying him PTD compensation, and this court should deny relator's request for a writ of mandamus.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1